607 So.2d 1018 (1992)
STATE of Louisiana, Plaintiff-Appellee,
v.
Michael Shane CAROUTHERS, Defendant-Appellant.
No. Cr 92-176.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*1020 David Williams, Lake Charles, for defendant-appellant.
Rick Bryant, Dist. Atty., Lake Charles, for plaintiff-appellee.
Before STOKER, YELVERTON and COREIL[*], JJ.
YELVERTON, Judge.
The defendant, Michael Shane Carouthers, was charged by indictment with distribution of cocaine and possession of cocaine with intent to distribute, both violations of La.R.S. 40:967A(1). A jury found him guilty as charged on both counts. The state filed an habitual offender bill. After a hearing the same day, the trial judge found the defendant to be a third felony offender and sentenced him to life imprisonment with the Louisiana Department of Corrections without benefit of probation, parole or suspension of sentence. Defendant now seeks review of his conviction and sentence based upon 12 assignments of error. Assignment of Error No. 2 was not briefed. Therefore, this assignment of error *1021 is considered abandoned. Uniform RulesCourts of Appeal Rule 2-12.4.
FACTS:
On January 25, 1991, Detective John Fryar, Chief of Detectives and Narcotics Supervisor for the Calcasieu Parish Sheriff's Office, was approached by a "concerned citizen" who stated that he had gone to Assunto's Motel on Broad Street in Lake Charles with another individual and had purchased crack cocaine. Detective Fryar proceeded to have Detective Ballard purchase crack cocaine at that location.
Detective Green was the surveillance officer for the undercover narcotics buy. He searched Detective Ballard and his unmarked vehicle. He then issued Detective Ballard the buy money and a self-contained body wire. Detective Green testified that the body wire was simply a transmitter that the ordinary person would think was a beeper. Detective Green and Detective LaBorde followed Detective Ballard after preparing him to make the buy, monitoring Detective Ballard's actions from their unmarked vehicle. They were assisted in surveillance by Detectives Folds and Hitefield in another unmarked car.
Detective Ballard and the "concerned citizen" went to the Assunto's Motel. They parked on the east side of the motel in an adjacent taxicab parking lot. As they walked towards Assunto's, they were joined by two subjects identified as Hughes and Simmons who were also going to purchase rock cocaine. Detective Ballard and the "concerned citizen" entered Room 36 directly behind Hughes and Simmons. Detective Ballard testified that the defendant and Shawna Vilar were inside the room. The defendant asked Detective Ballard what he was doing there and before he could respond Hughes advised the defendant that Ballard was "pretty cool." Detective Ballard testified that the defendant was near the west wall, Shawna Vilar was seated at a desk on the south side, and they stood on the north side of the room after entering from the west side of the room.
Detective Ballard testified that Shawna Vilar proceeded to sell him two rocks of cocaine for $20 apiece. He stated that the cocaine was on the desk and she advised him to take two. He gave her the $40 and took the cocaine. The defendant was standing five to six feet away. Detective Ballard testified that the surveillance officers came into the room shortly after the transaction.
Detective Green testified that they entered the room because they were concerned about Detective Ballard's safety due to the body wire not functioning properly. As a result, they could not hear what was going on in the room and there were numerous people milling in and about the room. The surveilling officers waited until after Detective Ballard had been given sufficient time to make some kind of transaction. First, the officer secured everyone to make sure there was no destruction of evidence, that nobody left the scene and to make sure no weapons were involved for the safety of the officers. The subjects standing outside the room were also secured. After the room was secured and the officers discovered that Detective Ballard had bought two crack rocks in the room, the subjects were advised of their Miranda rights and placed under arrest. The officers then began a search of the premises. Detective Green testified that he found nine rocks of cocaine on the desk in plain view. He also testified they located a box underneath the desk full of personal belongings of the defendant. Additionally, the defendant's wallet was in the top left desk drawer.
ASSIGNMENT OF ERROR NO. 1; DEFENDANT'S BRIEF, ARGUMENT II:
By this assignment of error the defendant contends that the trial judge erred in failing to grant his motion to suppress the evidence in this case. More specifically, the defendant argues that the fact that an unnamed concerned citizen gave information to deputies concerning the sale of cocaine does not by itself give the deputies the right to search the room without a warrant. The defendant agrees that the deputies acted properly in sending Detective Ballard into the motel room to make an undercover purchase. However, defendant argues that the deputies should have waited *1022 until Ballard left the room and then searched the room based upon information received from him. Finally, defendant argues that because they broke into the room before verifying that there was in fact cocaine in the room, the search was illegal and the evidence should have been suppressed.
It appears that Detective Ballard entered the room wired with a transmitter device in order to ensure his physical safety. Detective Folds was monitoring Ballard's conversations. However, during the course of the undercover purchase in the motel room, the body wire malfunctioned and the other detectives lost contact. The detectives made a decision to enter the room to assist Ballard and ensure his safety.
At the hearing on the motion to suppress, Detective Folds testified that he was monitoring Ballard's body wire from across the street. He testified that he heard the undercover narcotics purchase take place and was awaiting "the bust signal", but "all of a sudden the wire went dead." The officers also observed quite a number of men going in and out of the room where Detective Ballard was making his purchase. Folds testified that when the wire went dead, it was unknown whether somebody had found Ballard's body wire, turned it off, or what had happened. He testified it is not uncommon for people dealing drugs to carry weapons, and for fear of the safety of Ballard, the officers entered the room and after securing the persons inside, Folds observed illegal narcotics in plain view.
While warrants are generally required to search a home or a protected area of a person, police may enter if they reasonably believe someone inside is in need of immediate care. State v. White, 399 So.2d 172 (La.1981). Again in State v. Johnson, 407 So.2d 673, 675 (La.1981) the court stated that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. In Johnson, the undercover agent was wearing a transmitter which malfunctioned right after the agent made the statement "come on in", but before the detective monitoring the conversations heard a drug transaction. Thus, the safety of the undercover officer provided exigent circumstances for the police outside to enter defendant's dwelling without consent or warrant. It is clear that once inside the area, officers may seize contraband or evidence that is in plain view regardless of whether they suspected it to be there prior to entry.
We find that the exigent circumstances justified the immediate entry into the motel room without obtaining a warrant. The contraband was lawfully seized as it was in plain view and the subjects were arrested after Detective Ballard informed them of the transaction. This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 3; DEFENDANT'S BRIEF, ARGUMENT I:
The defendant contends that the district attorney made an improper argument when he told the jury that they could convict him of a different crime in addition to the crime with which defendant was charged, and that the trial judge erred in failing to grant a mistrial or admonish the jury concerning the improper argument.
The defendant here was charged by a bill of indictment with one count of distribution of cocaine and one count of possession of cocaine with intent to distribute. He filed a motion for a bill of particulars asking the state to name the person to whom the cocaine was distributed. The state's answer indicated that the defendant distributed cocaine to Tom Ballard. The indictment sets forth the date of January 25, 1991.
Before the trial, defense counsel learned that George Gaston would be testifying as a witness for the state. Mr. Gaston testified, without objection by defense counsel, that he purchased cocaine from the defendant right before they were arrested and right before the purchase by Ballard.
The defendant argues that he did not object to this testimony because he knew it was admissible as part of the res gestae. However, the defendant argues that it was improper for the district attorney to tell the *1023 jury during his closing argument that the defendant could be convicted of distribution of cocaine to either George Gaston or Tom Ballard. The defendant also points out that his attorney told the jury during his closing argument that he could only be convicted of distribution to Tom Ballard, but that during rebuttal the district attorney told the jury that the defense counsel was trying to confuse them, and again told the jury just to decide whether or not the defendant distributed crack cocaine on January 25, 1991. The defendant argues that this amounts to his being charged with a new offense during the trial.
The defendant further argues that his motion for a mistrial should have been granted as the bill of particulars did not list George Gaston with Tom Ballard as a person to whom the defendant distributed cocaine. The district attorney argued at trial that his closing argument was permissible as it was based on the evidence presented at the trial.
The trial judge stated that he had the authority to order an amendment of the indictment under La.C.Cr.P. art. 488, which provides:
When there is a variance between the allegations of an indictment or bill of particulars which state the particulars of the offense, and the evidence offered in support thereof, the court may order the indictment or bill of particulars amended in respect to the variance, and then admit the evidence.
However, the trial judge never actually ordered the indictment amended. The trial judge denied the motion for a mistrial. The court stated:
Well, then my final ruling will be, number one, it's res gestae, not requiring cautionary. Number two, it was not objected to co-temporaneously [sic]. So the evidence is in. Consequently, number three, it's inppropriate [sic], the motion for mistrial is therefore inappropriate because it doesn't have the proper foundation.
By way of further explanation the court stated:
Now, that evidence came in, and it was amplified by defendant himself on cross examination, and although technically true that the bill of particulars limits it to Ballard, the bill is primarily concerned, of course, with explaining the charge that was brought, and that is for the distribution of cocaine, as well as the possession.
* * * * * *
I'm concerned with the difference between the bill of particulars and what you told them, and what you told them is entirely correct, and the bill was entirely correct at the time. And not seeing any real prejudice and seeing the events as being so closely innertwinned [sic], I don't believe that I am constrained to grant a mistrial. I am not inclined to do it and I will not grant the mistrial.
In his supplemental brief, the defendant indicates that the trial judge stated he did not think a mistrial was appropriate. However, defendant also points out that the trial judge offered to give a cautionary instruction if the state would withdraw its request for a conviction based on the sale to Gaston. The state refused and no cautionary instruction was given.
Procedural due process requires that a person be tried and convicted only for specific offenses with which he is charged. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948). A variance between the indictment and the proof which destroys the defendant's substantial right to be tried only on charges presented in an indictment is not harmless error. Stirone v. United States, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252, 257 (1960); United States v. Carroll, 582 F.2d 942 (5th Cir.1978).
In the case before us the indictment and the bill of particulars, when read together, indicate that the defendant was charged for the distribution of cocaine to Tom Ballard. However, the district attorney argued in closing that the defendant could be convicted of distribution to George Gaston as well as to Tom Ballard. This argument was based on the testimony of Gaston without objection by the defendant *1024 that he had also purchased cocaine from the defendant. The statement by the district attorney during closing arguments was improper as the indictment and bill of particulars indicate that the defendant was charged with distribution of cocaine to Tom Ballard. Furthermore, it cannot be considered harmless error as it is not clear whether the jury convicted the defendant of the charged offense, that distribution involving Tom Ballard, or for the uncharged offense of distribution to George Gaston. This assignment of error has merit.
ASSIGNMENT OF ERROR NO. 4; DEFENDANT'S BRIEF, ARGUMENT VI:
By this assignment of error, the defendant contends the district attorney erred in making reference to his failure to testify and the trial judge erred in failing to grant a mistrial.
During closing argument, the district attorney stated the following:
Ladies and gentlemen, at this time we're going to turn to the defendant's case. The defendant has no case, ladies and gentlemen. Our case stands uncontradicted. Nothing I put on today was contradicted by anything the defense put on. My case is crystal clear. The defendant introduced one exhibit and one witness, ladies and gentlemen. Neither one contradicted anything I put on. The exhibit didn't hurt, and I will submit to you that the witness in fact helped my case.
The defendant argues that this comment by the district attorney is a prejudicial remark referring indirectly to the defendant's failure to testify. As a result, he contends he is entitled to a mistrial under La.C.Cr.P. art. 770(3).
In State v. Johnson, 541 So.2d 818 (La. 1989), appeal after remand, 597 So.2d 79 (La.App. 4th Cir.1992), the Louisiana Supreme Court stated:
In cases where the prosecutor simply emphasized that the state's evidence was unrebutted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so, we have held that the prosecutor's argument did not constitute an indirect reference to the defendant's failure to take the stand.
In State v. Sergon, 539 So.2d 1275 (La.App. 3rd Cir.1989), we said:
"References made in closing argument that the State's case stands uncontroverted have been frequently upheld by this Court. See State v. Sims, 346 So.2d 664 (La.1977); State v. Reed, 284 So.2d 574 (La.1973). A statement that the State's theory of the case remains unassailed encompasses the entire case presented by the defense and does not focus on the defendant's failure to take the stand. However, when the defendant is the only person who can dispute the testimony, a reference to the testimony as uncontroverted focuses the jury's attention on the defendant's failure to testify. See State v. Perkins, 374 So.2d 1234, 1237 (La.1979)." See also State v. Sprinkle, 439 So.2d 1230 (La.App. 5th Cir.1983).
In the instant case, the record shows that the defendant was not the only person who could have disputed the testimony of the various witnesses presented by the state. Detective Ballard entered the motel room at the same time as the "concerned citizen" and two other black males. Detective Ballard also testified that Shawna Vilar was present in the room when he made the narcotics purchase from the defendant. Detective Ballard's testimony was corroborated by Detective David Green and Detective Dale Folds who were conducting surveillance of the undercover narcotics purchase. They testified as to what they saw when Detective Ballard entered the motel room and who was in the room when they entered.
The prosecutor's statement during closing was not an improper reference to the defendant's failure to testify; it said merely that the state's evidence was unrebutted. Furthermore, this statement was not grounds for a mistrial as there were witnesses, other than the defendant, who could have testified on behalf of the defense but did not.
*1025 For the foregoing reasons this assignment of error is without merit.
ASSIGNMENTS OF ERROR NOS. 5, 6 AND 7; DEFENDANT'S BRIEF, ARGUMENT IX:
These assignments of error are reviewed together as they were argued together by the defendant in his brief. By these assignments, the defendant contends that the habitual offender statute was improperly applied and that the trial judge erred in finding the defendant guilty as an habitual offender. Furthermore, the defendant argues that the sentence he received was unconstitutionally long and excessive, and that the habitual offender statute as applied in this case is unconstitutional.
La.R.S. 15:529.1 provides in pertinent part:
A. Any person who, after having been convicted within this state of a felony, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government or country of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
* * * * * *
(2) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then,
* * * * * *
(b) If the third felony and each of the two prior felonies involved a violation of R.S. 14:34, R.S. 14:62.1, R.S. 14:65, R.S. 14:110(B), or of any crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
At the habitual offender hearing, the district attorney introduced into evidence a prior conviction packet which indicated that the defendant had been convicted in Texas of "robbery with bodily injury" on April 8, 1985, and "robbery of an inhabited dwelling" on April 5, 1989. Additionally, Ms. Shirley Green, a record keeper and fingerprinting examiner with the Calcasieu Parish Sheriff's Office, testified that the fingerprints and pictures in the "pen pack" matched those taken from the defendant, thus identifying the defendant as the same person.
Mr. Brian Gill, who is licensed to practice law in Texas as well as Louisiana, testified as an expert. He testified that both robbery and burglary carry a penalty of up to twenty years imprisonment under the Texas Penal Code. Additionally, the district attorney introduced copies of the Texas statutes into evidence which indicate that the defendant was exposed to a maximum of 20 years imprisonment on each charge as they are both second-degree felonies in Texas. Following these convictions, the defendant was convicted in Louisiana on September 26, 1991, of the felony crimes of distribution of cocaine and possession of cocaine with intent to distribute in violation of La.R.S. 40:967A(1). Furthermore, La. R.S. 40:967B(1) provides that the maximum sentence for each of these violations is 30 years imprisonment at hard labor.
The defendant argues that the trial court erred in relying upon the maximum penalties provided by Texas law in applying La. R.S. 15:529.1A(2)(b). He contends that the prior felony convictions are analogous to La.R.S. 14:62, simple burglary, and La.R.S. 14:65, simple robbery, both of which are felonies under Louisiana law but have maximum penalties of 12 years or less. All of the jurisprudence cited by the defendant refers to the improper enhancement of sentencing under the habitual offender statute whereby one or more prior out-of-state convictions which would have been a misdemeanor if committed in Louisiana were used to enhance the defendant's sentence.
In State v. Dickerson, 579 So.2d 472 (La.App. 3rd Cir.1991), writ granted in part, denied in part, 584 So.2d 1140 (La.1991), this court affirmed the defendant's conviction and sentence where his sentence was enhanced under La.R.S. 15:529.1A(3)(b), which is the same provision for enhancement *1026 as a fourth offender. In Dickerson this court reviewed the maximum penalties under Alabama law in affirming the defendant's sentence instead of referring to the analogous crime under Louisiana law and using its penalty range to determine if the defendant's sentence could be enhanced under La.R.S. 15:529.1A(3)(b).
It is our opinion that the trial judge properly considered the Texas penalty provisions for the defendant's two prior convictions in sentencing him under La.R.S. 15:529.1A(2)(b).
The defendant also contends that his sentence is excessive and the habitual offender statute is unconstitutional as it is applied in the instant case. This argument has no merit. The trial court was statutorily mandated to sentence the defendant to serve life imprisonment without benefit of parole, probation or suspension of sentence under La.R.S. 15:529.1A(2)(b). Thus, the sentence imposed is not unconstitutionally excessive. Furthermore, this court has recognized the constitutionality of La.R.S. 15:529.1 as examined by the Louisiana Supreme Court in State v. Lawson, 410 So.2d 1101 (La.1982). See State v. Jones, 462 So.2d 1373 (La.App. 3rd Cir.1983), writ denied, 466 So.2d 1301 (La.1985).
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 8; DEFENDANT'S BRIEF, ARGUMENT VIII:
By this assignment of error, the defendant contends that there were defects in the habitual offender hearing which rendered his adjudication as a third felony offender illegal. More specifically, the defendant contends that the trial court erred in holding the habitual offender hearing the same day in which the habitual offender bill was filed. Therefore, he contends he was not given adequate time to prepare a defense for the charges. Additionally, the defendant argues that the state failed to meet its burden of proving that the defendant was properly Boykinized at the time of his prior guilty plea.
It should first be noted that La.R.S. 15:529.1 does not mandate any specific minimum delay between the time the defendant denies the allegations, and when inquiry is to be made as to whether the offender has been convicted of a prior felony. However, this court in State v. Ellis, 487 So.2d 752 (La.App. 3rd Cir.1986), writs denied, 492 So.2d 1216, 492 So.2d 1217 (La.1986), citing State v. Davalie, 313 So.2d 587 (La. 1975) stated:
"However, it is only reasonable to assume that the legislature intended that the judge fix the hearing with sufficient delay to afford the accused an adequate opportunity to investigate the allegations of prior convictions and respond thereto. Considerations of fairness and justice require such an interpretation."
This court stated further that delay for preparation was a fundamental constitutional right. The denial of this right would be a denial of due process. In Ellis, the sentencing was set for February 15, 1983. On that date the state filed habitual offender bills of information. The defendants pleaded not guilty, so the trial court fixed a hearing instanter. The defendants objected, arguing that the instanter hearing denied them the opportunity to investigate the allegations and prepare their defense to the habitual offender bills. This court held that the fixing of the hearing instanter on the habitual offender bill of information, without providing for sufficient delay to afford the defendants an opportunity to investigate the charges and prepare defenses prior to the hearings, was a denial of due process.
The instant case is clearly distinguishable from Ellis. In the instant case, the September 26, 1991, court minutes of the defendant's trial show that the state gave notice in open court to the defendant and his counsel of its intention to file a habitual offender bill against the defendant. The court then set the habitual offender hearing for October 21, 1991. At the hearing the state introduced the bill of information charging the defendant as an habitual offender. The trial judge asked the defense attorney if he had any objection. He responded that he had not seen the bill of information. The judge ordered that the bill be filed and the defense attorney received *1027 a copy. The judge stated that the court would go on with the hearing even though the defendant was not previously provided with a copy of the bill as it had been regularly set at the time of conviction and in conformity with past procedure permitting an instanter hearing. The only objection by defense counsel was to the introduction of the penitentiary package showing the defendant's convictions from Texas whereby he claimed the "pen pack" did not comply with the statute as far as proof.
Under these circumstances the defendant was not deprived of his right to prepare a defense against the habitual offender proceeding. The defendant was not charged with a new crime and the burden of proof was on the state to prove the prior felony convictions. The hearing was set for 25 days after the time of conviction when the defendant was given notice of the state's intention to file the habitual offender bill. The defendant was represented by counsel at the habitual offender proceeding and his counsel did not object to the time that this proceeding was held. It was not error for the trial court to hold an habitual offender proceeding 25 days after defendant was notified in open court that the state intended to file an habitual offender bill even though the bill was not actually filed until the day of the hearing. The defendant was not deprived of his right to prepare a defense against the habitual offender allegations.
The defendant also contends that the state failed to meet its burden of proof that he was properly Boykinized when entering his guilty pleas on the prior felony convictions used to enhance his sentence. In multiple offender proceedings in which non-Louisiana prior guilty pleas are used, the state must only prove that the guilty pleas occurred with representation of counsel. The burden of proof is on the defendant to prove that he was not properly Boykinized prior to entering the guilty plea. State v. Smith, 415 So.2d 930 (La. 1982); State v. Roquemore, 574 So.2d 473 (La.App.2d Cir.1991), granted in part and remanded, 580 So.2d 912 (La.1991); State v. Mills, 570 So.2d 540 (La.App. 4th Cir. 1990). The state here met its burden of proof as the record indicates and defendant admits that the prior guilty pleas were made with representation of counsel.
Finally, although not argued by the defendant, it should be pointed out that the defendant was not informed of his right to remain silent as to the habitual offender allegations. However, a review of the transcript indicates the defendant remained silent throughout the proceedings. There is nothing in the record indicating that he denied or admitted the allegations. The state put on evidence to prove the defendant's prior felony convictions. The trial court's failure to advise the defendant of his right to remain silent, although recognizable as an error patent, was harmless in this case. In State v. Jackson, 563 So.2d 1362 (La.App. 3rd Cir. 1990), the court held that the trial court's failure to advise the defendant, who was sentenced as a multiple offender, of his right to remain silent would be harmless error if it was proved by competent evidence at the multiple offender hearing that the defendant was the same person convicted of the predicate offense in a multiple offender bill. See also State v. Mallett, 552 So.2d 28 (La.App. 3rd Cir.1989), writs denied, State ex rel. Mallett v. State, 556 So.2d 1258 (La.1990), 558 So.2d 567 (La. 1990). In the instant case, the state proved that the defendant was the same person convicted of the two prior offenses in the multiple offender bill, through the testimony of Ms. Green, who examined the fingerprints of the defendant, through the certified records indicating the defendant had two prior convictions in Texas, and through the testimony of Mr. Gill that the possible sentences for each of those convictions was more than 12 years. Therefore, the trial court's failure to warn the defendant of his right to remain silent was harmless error as the state proved that the defendant was a multiple offender.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 9; DEFENDANT'S BRIEF, ARGUMENT III:
By this assignment of error, the defendant contends that his conviction of *1028 both distribution of cocaine and possession of cocaine with intent to distribute arising out of one transaction was a violation of the prohibition against double jeopardy.
The Fifth Amendment to the United States Constitution made applicable to the states prohibits double jeopardy. Likewise, the Louisiana Constitution provides that no person shall be twice placed in jeopardy for the same offenses. La. Const. Art. 1 § 15. The guarantee is to protect a person from a second prosecution after he has already been acquitted or convicted of that offense. It also protects an accused against multiple punishment for the same conduct. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); State v. Vaughn, 431 So.2d 763 (La.1983).
Louisiana uses both the "Blockburger test" and the "same evidence test" in determining whether double jeopardy exists. La.C.Cr.P. art. 596; State v. Vaughn, supra, and cases cited therein.
The "Blockburger test" was set out by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, at page 304, 52 S.Ct. 180, at page 182, 76 L.Ed. 306, at page 307, (1932), where the Court stated:
The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.
The "same evidence test" has been adopted by the Louisiana Supreme Court and was explained by the Court in State v. Steele, 387 So.2d 1175 (La.1980), as follows:
If the evidence required to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one. The test depends on the evidence necessary for conviction, not all the evidence introduced at trial. See State v. Doughty, supra.
The "same evidence test" is somewhat broader in concept than Blockburger, the central idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct. Id. at 1177.
See also, State v. Vaughn, supra, at page 766.
Therefore, "[d]ouble jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct." State v. Vaughn, supra, at page 767, and cases cited therein.
In the present case the defendant was convicted of distribution of cocaine and possession with intent to distribute cocaine, both violations of La.R.S. 40:967A(1). The state introduced at trial the testimony of Tom Ballard who stated that the defendant and Shawna Vilar sold him two rocks of crack cocaine for $40. This evidence supported a finding of guilty for the charge of distribution of cocaine. Additionally, the state introduced evidence obtained as a result of a search incident to the arrest of the defendant for possession with intent to distribute cocaine. Detective David Green testified that he found nine off-white rock-like pieces in the room that appeared to be rock cocaine. This evidence was later determined to be rock cocaine and was introduced at the trial to support the charge of possession with intent to distribute.
The evidence required to support a finding of guilty for the charge of distribution in this case would not have supported the defendant's conviction for possession with intent to distribute. The state introduced the two rocks of cocaine sold to Detective Ballard along with the corroborating testimony of the transaction to prove the defendant knowingly and intentionally distributed cocaine. The nine rocks later found in the room were introduced to prove the defendant possessed cocaine with intent to distribute. Thus, the defendant's conviction on both charges did not constitute double jeopardy.
For the foregoing reasons this assignment of error is without merit.
*1029 ASSIGNMENT OF ERROR NO. 10; DEFENDANT'S BRIEF, ARGUMENT IV:
By this assignment of error, the defendant contends that the evidence was insufficient to convict him of the crimes. The defendant argues that he took no part in the transaction except for asking Detective Ballard what he was doing in the room. He also contends that the testimony by George Gaston indicating he had purchased cocaine from Shawna Vilar and the defendant was contradicted by the written statement Gaston gave at the time of his arrest whereby he indicated a girl next door was selling. Finally, the defendant argues that the state failed to prove beyond a reasonable doubt that he was in possession of the cocaine or that he intentionally participated in the distribution of cocaine.
When the issue of sufficiency of the evidence is raised, the standard of review is that set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
Under the Jackson standard the reviewing court must determine that the evidence considered in the light most favorable to the prosecution is sufficient to convince any rational trier of fact that the defendant is guilty beyond a reasonable doubt of committing the specific offense.
In order for the state to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt. In regard to the charge of distribution of cocaine, La.R.S. 40:967 reads in pertinent part as follows:
A. Manufacture; distribution. Except as authorized by this Part1 or by Part VII-B of Chapter 5 of Title 402 of the Louisiana Revised Statutes of 1950, it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in Schedule II;
Thus, the state had to prove that the defendant knowingly and intentionally distributed cocaine to obtain a conviction.
In this case undercover agent Tom Ballard entered the defendant's motel room and purchased two rocks of cocaine for $40. Detective Ballard testified that when he entered the room the defendant asked him what he was doing there. He testified the cocaine was on the desk, and, when he told Shawna Vilar what he wanted, she told him to take two rocks, referring to the cocaine. He stated that he gave her $40 and then took the rocks. Detective Ballard further stated that the defendant was five or six feet away from Vilar and the cocaine when the transaction took place.
The state also called George Gaston as a witness. Gaston testified that he purchased drugs from the defendant and Shawna Vilar in the same room and on the same date as Detective Ballard. Gaston specifically stated that the defendant got the drugs from the lady and handed them to him. He also stated that he testified for the state in return for the state's dismissal of other charges against him, namely possession of drug paraphernalia. Gaston testified that the defendant and the lady were working together, and as far as he knew the room was registered to the defendant. He testified further that Shawna Vilar was in the room "from time to time." Gaston stated they would sell drugs to anybody that came in the room after they asked a few questions and figured out the person was not a policeman.
Finally, Richard Donahoe, a forensic chemist for the Southwest Regional Crime Lab, examined the contents of the substance distributed to Ballard and determined it was cocaine.
The state proved that the defendant knowingly and intentionally distributed cocaine. *1030 Although the defendant did not actually hand the drugs to Ballard during this transaction, the defendant had knowledge of the distribution of drugs in a room registered in his name while he was present. Additionally, the state presented testimony that the defendant and Shawna Vilar were working together in the distribution of cocaine. This evidence, viewed in the light most favorable to the prosecution, proves beyond a reasonable doubt that the defendant was a principal in the distribution of cocaine on January 25, 1991.
In regard to the charge of possession of cocaine with intent to distribute, in violation of La.R.S. 40:967A(1) set forth above, the state had to prove the defendant knowingly or intentionally possessed cocaine with intent to distribute in order to obtain a conviction.
The prosecution is not required to show actual possession in order to convict. The state need only show that the defendant exercised dominion and control over the illegal substance. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Rexrode, 536 So.2d 671 (La.App. 3rd Cir. 1988). The mere presence of the defendant in the area where narcotics are discovered is insufficient to support a finding of possession. What must be shown is that the defendant had a direct right and ability to exercise control. State v. Newberry, 560 So.2d 121 (La.App. 3rd Cir.1990).
Direct evidence was presented to prove that the defendant had the right and ability to exercise control over the cocaine found in his room. Detective Ballard testified that the defendant was five to six feet away from the rock cocaine which was on the desk in his room in plain view. Additionally, Detective Ballard testified that the room where the cocaine was found was assigned to Clark College and was rented to the defendant and a man named Barnes. He stated that Barnes was not present at the time this transaction took place. Detective David Green testified that he found a boot box underneath the desk that was full of the defendant's personal belongings. These belongings included letters, school papers and other things, all with the defendant's name on them. They also found a wallet with personal identifiers of the defendant in the top left desk drawer.
In order to convict the defendant of possession with intent to distribute the state had to also prove that the defendant intended to distribute cocaine. However, in the instant case the defendant's intent to distribute is not at issue. The defendant argued in brief that the evidence was insufficient only in that the state failed to prove beyond a reasonable doubt that he was in possession of cocaine. The prosecution proved that the defendant was in constructive possession of the narcotics.
For the foregoing reasons, this assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 11; DEFENDANT'S BRIEF, ARGUMENT V:
By this assignment of error the defendant contends that his conviction by less than a unanimous jury was unconstitutional.
The vote on distribution of cocaine was 10 of 12 jurors, and on conviction of possession of cocaine with intent to distribute, 11 of 12 jurors. The defendant recognizes that La.C.Cr.P. art. 782 permits a defendant to be convicted and sentenced to hard labor if 10 of 12 jurors concur in the verdict. Nevertheless, he makes the argument that because two jurors disagreed on one count and one juror disagreed on the other count, reasonable doubt existed concerning his guilt. Thus, he contends it is unconstitutional to convict a person and sentence him to hard labor when reasonable doubt exists concerning his guilt.
The Louisiana Supreme Court has specifically ruled on the constitutionality of La. C.Cr.P. art. 782 in State v. Edwards, 420 So.2d 663 (La.1982).
This assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 12; DEFENDANT'S BRIEF, ARGUMENT VII:
By this assignment the defendant contends that the closing argument of the prosecutor contained numerous arguments that were improper and were designed to *1031 inflame the jury against him and that this entitled him to a mistrial.
The defendant argued that the district attorney made improper arguments concerning the extent of the drug problem in Calcasieu Parish and concerning the fact that persons from Texas were part of the problem. He argues that these arguments were designed to prejudice the jury against him because he was from Texas. He contends that these arguments contributed to the verdict and were grounds for a mistrial. Thus, defendant argues that the trial judge erred in failing to grant the mistrial requested at the end of the state's closing argument.
He sets forth the arguments complained of as follows:
1. The prosecutor talked about the fact that people used to be called dope pushers and pushermen but now they no longer have to go out and push the drugs because people get hooked and keep coming back.
2. The district attorney gave his opinion that Mr. Gaston appeared to him to be very credible.
3. The prosecutor told the jury that their case stood uncontradicted, thereby pointing out that appellant did not testify.
4. The district attorney told the jury that in his opinion, the evidence was pretty clear.
5. The district attorney in his rebuttal argument again told the jury that in his opinion the evidence had clearly proved that appellant was guilty of both charges.
6. The district attorney went into a long argument in which he told the jury that we asked people just to say no to drugs and they need to send a message to people from Texas not to come to Louisiana and sell crack cocaine in Lake Charles.
7. The district attorney told the jury that it was sometimes good to be modest [but] when he has a strong case he doesn't try to be modest and he had a strong case.
8. The district attorney told the jury about the extent of the drug problem in north Lake Charles and that somebody needs to do something about it.
The defendant contends that La.C.Cr.P. art. 774 requires the prosecutor's argument to be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case. The defendant complains that the prosecutor's argument frequently strayed from the facts of the case.
A portion of the district attorney's argument complained of by the defendant, set forth in numbers six and eight above, was made during his rebuttal and says this:
* * * * * *
Ladies and gentlemen, we ask people to just say no to drugs. Some do and some don't. When the ones that don't get caught, ladies and gentlemen, we have to send a message to them. No. You can't come from Texas and distribute crack cocaine here in our town, not here in Lake Charles, ladies and gentlemen.
* * * * * *
Like Mr. Clark told you when I was talking to him about his neighborhood, north Lake Charles, the northern part of Lake Charles, he said, yeah, it's rough out there. It's a rough neighborhood. You got crack dealing going on. And like Mr. Clark said, it is tough out there, ladies and gentlemen. There's no doubt about it. It is tough out there and it's time somebody does something about it, ladies and gentlemen.
It is improper for a prosecutor to turn closing argument into a general discussion on crime. However, an improper remark should result in reversal only if the remark has clearly influenced the jury and contributed to the verdict. State v. Everett, 530 So.2d 615 (La.App. 3rd Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989).
In the instant case, Chief of Detectives John Fryar of the Calcasieu Parish Sheriff's Office testified that large amounts of cocaine being recovered here in Lake *1032 Charles were originating from the Houston, Texas, area. The district attorney's reference to this statement in closing was not reversible error under the provisions of Article 774. The reference stemmed from admitted evidence and was not intended to prejudice the jury.
The remaining allegedly improper arguments set forth by the defendant, even if considered improper, did not affect the verdict because it cannot be said that the remarks clearly influenced the jury and contributed to the verdict. Additionally, it should be noted that the argument complained of in regard to the defendant's failure to testify is specifically addressed in assignment of error number four. Lastly, in regard to the district attorney's statement that he had a strong case, the defendant's objection to this opinion about the strength of the case was sustained by the trial judge.
For the foregoing reasons this assignment of error is without merit.

CONCLUSION
The trial judge erred in failing to grant a mistrial or admonish the jury based on the district attorney's statement in closing argument which told the jury that they could convict the defendant of distribution either to George Gaston or Tom Ballard. This argument was improper as the bill of particulars specifically stated that the cocaine was distributed to Tom Ballard. Although the testimony of George Gaston was introduced at trial without objection, the scope of the indictment should not have been widened to include the uncharged crime of distribution to George Gaston without an amendment to the indictment. As a consequence, it is impossible to determine whether the defendant was convicted of distribution to George Gaston or Tom Ballard. Thus, the defendant's conviction and sentence for distribution of cocaine is reversed and the case is remanded to the trial court for retrial.
The defendant's conviction for possession with intent to distribute is affirmed.
Additionally, the defendant's adjudication and sentence as an habitual offender on his conviction for possession of cocaine with intent to distribute is affirmed as the defendant was properly found to be a third offender. In sentencing the defendant under La.R.S. 15:529.1A(2)(b) the trial judge stated that each of the instant convictions carried the same penalty of 30 years and the prior out-of-state convictions carried the possibility of sentences up to 20 years. Thus, the trial judge was statutorily mandated to sentence the defendant to life without benefit of probation, parole or suspension of sentence.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[*] Honorable Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.